**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF VETERANS AFFAIRS<br>810 Vermont Avenue, N.W.<br>Washington, D.C. 20420,<br><br>Defendant. | Civil Action No. 21-1954 |

## COMPLAINT

1.     Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to agency records maintained by the United States Department of Veterans Affairs ("VA"), by and through its various components and offices.

2.     The FOIA requests at issue—none of which has received a timely final determination—seek records concerning how the VA is implementing the VA MISSION Act of 2018 and the Veterans Community Care Program ("VCCP").  AFPF seeks to understand how changes introduced by the VCCP's access standards for community care are reflected in current appointment and wait-time data at various VA medical centers around the country.  It also seeks internal guidance documents or other directives that may have been issued by either top VA officials or the White House, and which pertain to interpretation of the agency's VCCP regulations.

3.     The requested records have significant value that serves the public interest.  The VA has faced repeated scandal in recent years over its mismanagement of patient scheduling

systems and wait-time data.  As detailed below, publicly available records suggest yet another scandal is brewing, with the VA covering up wait-time data and doing little else to avoid the problem.    Indeed,  the  agency  may  be  actively  avoiding  its  obligations  for  transparent administration of the MISSION Act.  Delayed care has tragic effects on the health of veterans. Finally, the VA has politicized its FOIA processes to delay inevitable disclosure of the requested records that will shine light on this suspected malfeasance.

## JURISDICTION AND VENUE

4.     Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

5.     Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

6.     Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.  Among other things, AFPF, through its grassroots education project, Concerned Veterans for America Foundation, educates and empowers veterans to lead healthy and prosperous lives, including educating on the privileges and benefits afforded to veterans under the law.  As part of its mission, AFPF files and litigates FOIA requests to investigate and learn about the functions of government.

7.     Defendant VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The VA, by and through its various components and offices, has possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

## FACTS

**I.    The VA's Troubling History of Obfuscating Wait-Time Data**

8.    The VA has been plagued for years by scandals surrounding its misreporting of "wait times" at VA medical facilities.  In 2014, for example, media sources revealed that the VA health care system in Phoenix, Arizona kept "secret wait lists" to obscure non-compliance with the agency's fourteen-day target wait time.  *See* Scott Bronstein & Drew Griffin, *A fatal wait: Veterans languish and die on a VA hospital's secret list*, CNN, Apr. 23, 2014, https://cnn.it/3u5XDhg; *see also* The Ariz. Republic, *Timeline: The story behind the VA scandal*, USA Today, May 21, 2014, https://bit.ly/3hLvRUD.   Several years later, a Government Accountability Office ("GAO") report revealed the VA still had a long way to go in improving the reliability of its appointment and data reporting and avoiding endangerment of veterans' lives and well-being.  *See* Nikki Wentling, *Five years after Phoenix scandal, VA still doesn't keep reliable wait-time data*, Stars & Stripes, July 24, 2019, https://bit.ly/2SeloGp; *see generally* Gov't Accountability Office, VETERANS HEALTH CARE: Opportunities Remain to Improve Appointment Scheduling within VA and through Community Care, Report No. GAO-19-687T (July 2019), *available at* https://bit.ly/3qagpDz.

9.    Congress eventually addressed these issues with passage of the VA MISSION Act of 2018, Pub. L. No. 115-182, 132 Stat. 1393.  The MISSION Act established the VCCP, which requires the VA to timely schedule medical appointments and refer America's veterans to private care whenever the VA cannot provide prompt service.  *See generally Then and Now: What's Changed Since the VA MISSION Act Was Signed Into Law?*, Concerned Veterans for Am., June 9, 2021, https://bit.ly/3ih68C9 ("The VA MISSION Act has been instrumental in ensuring veterans receive quality, timely medical care and in creating a more dynamic [VA].  Before the VA MISSION Act, too many veterans were struck in an overly bureaucratic health care system that

was focused primarily on the needs of the VA rather than the needs of the veterans it served.  Few veterans were able to access care outside the VA.  They were stuck waiting weeks or months for appointments, even after measures to ease restrictions.").

10.     In June 2019, the VA implemented "designated access standards" to establish eligibility for the VCCP.  *See* 84 Fed. Reg. 26278 (June 5, 2019) (to be codified at 38 C.F.R. pt. 17).  Under those standards, patient referral is contingent upon the VA scheduling an appointment within twenty days for primary, mental health, or non-institutional extended care, or twenty-eight days for specialty care.  *See* 38 C.F.R. § 17.4040.  Importantly, wait times must be calculated from the "date of request" for an appointment.  *See id.*

11.     One commentator has suggested that the VA is on the verge of "another wait-time scandal."  Darin Selnick, *A new VA wait-time scandal is brewing and we have no way to know how big it is*, USA Today, Mar. 5, 2021, https://bit.ly/344uk3U.  According to Mr. Selnick, the VA is ignoring its own access standards and employing older metrics created for the Veterans Choice Program.  *See id.*  Other sources confirm that the VA has been less-than-transparent about its wait-time metrics.  *See, e.g.*, Nicole Ogrysko, *Without clear standards, veterans are in the dark on community care wait times*, Fed. News Network, Oct. 1, 2020, https://bit.ly/3v7Ydwj.

12.     The VA's lack of transparency—and potentially purposeful manipulation of wait-time data—is all the worse given the agency's apparent decision to suspend or limit community care referral during the COVID-19 pandemic.  Moreover, the agency's intentional cancellation and rescheduling of medical appointments—approximately 20 million by some counts—during the pandemic has inexcusably placed veterans' lives in jeopardy.  *See By the Numbers: The Impact of Canceled Appointments at the VA*, Concerned Veterans for Am., Mar. 31, 2021, https://bit.ly/3va844D ("Millions of untracked canceled appointments, poor coordination for

community care appointments, and irrelevant data are creating the perfect storm for another wait-time scandal."); *see also* Darin Selnick, *Veterans shouldn't have to wait for quality care*, The Hill, Apr. 7, 2021, https://bit.ly/3ypkZBH; *see generally* Dep't of Veterans Affairs Office of Inspector Gen., Review of Veterans Health Administration's Emergency Department and Urgent Care Center Operations during the COVID-19 Pandemic (Dec. 2020), *available at* https://bit.ly/2QF1sfI.

13.     Upon information and belief, the VA's suspected malfeasance in calculating and recording wait times according to the VCCP access standards is based, in part, upon its conflation of "patient indicated date," "preferred date," or "clinically indicated date." The VCCP regulations require wait times to be calculated from a patient's "date of request" for an appointment. A "preferred date" or "patient indicated" date, on the other hand, refers to when a veteran *prefers* to be seen in the absence of a clinical determination for follow-up care. And a "clinically indicated date" refers to when a provider *advises* a patient when he or she should return for follow-up. The MISSION Act and VCCP implementing regulations only allow for calculating wait times based upon a "date of request."

14.     Upon information and belief, the VA's wait-time data may be inaccurate in other ways, too. With patient consent, the VA may schedule an appointment outside the mandated 20-/28-day wait period but without triggering a referral to community care. It seems, however, that veterans are *not* being given the chance to consent to such scheduling. Moreover, it appears that wait-time data, when available, is being computed based on *scheduled* appointments, rather than *completed* appointments. When the VA cancels and reschedules an appointment, this "restarts" the official "wait time." That practice delays referral to community care, perhaps without the knowledge of the patient, and violates the spirit of the MISSION Act.

15.     Publicly available agency records already substantiate some of the foregoing allegations.  A May 2021 letter from GAO to the Secretary of Veterans Affairs, for example, strongly implies that the VA has adopted a questionable interpretation of the VCCP access standard and "desired date field," which calls into question the overall reliability of the agency's wait-time statistics and appointment-scheduling system.  *See* Letter from Gene L. Dodaro, Comptroller Gen. of the U.S., to Hon. Denis McDonough, Sec'y of Veterans Affairs at 2, May 10, 2021, *available at* https://bit.ly/342welC; *see also* Walt Buteau, *Veteran health care wait-time data lacks reliability and accuracy, feds say*, Tampa News Channel 8, May 26, 2021, https://bit.ly/3xzWQqK.

16.     Agency records released under the FOIA by the James A. Haley Veterans Hospital in Tampa, Florida similarly suggest that the VA has improperly adopted "2 measures for wait times"—namely, "create date" and "Patient Indicated Date"—in order to avoid what the agency's considers an "artificial[] inflat[ion] [of] wait times," despite the VCCP's clear access standards. *See* **Exhibit 1**.

17.     Finally, agency records proactively disclosed in the VA's electronic FOIA Reading Room reveal the agency has implemented a "temporary strategic pause to the MISSION Act Standards" for the VCCP, despite the lack of *any* legal authorization to do so.  *See* **Exhibit 2**. Based on guidance from the White House, the VA has decided that "[r]eferral to the community . . . will [only] continue when necessary."  *Id.*  Again, there is no legal authorization for the agency to "institut[e] a temporary strategic pause," or to intentionally avoid proper scheduling and record-keeping to obfuscate public knowledge of its avoidance of duties under the MISSION Act.

**II.    The VA's Politicized "Substantial Interest" FOIA Review Process**

18.    For years, the VA has maintained a special, politicized FOIA review process for those requests that implicate potentially embarrassing or politically sensitive records.  This review process, at best, leads to unjustified delay in FOIA request processing.  At worst, it involves intentionally inadequate searches, politicized document review, improper redaction, and incomplete disclosure.  *See, e.g.*, *Investigation Update: The VA continues to subject certain FOIA requests to "sensitive review," but the agency is keeping records about the practice secret*, Cause of Action Inst., Aug. 9, 2019, https://bit.ly/3gFfM24.

19.    In August 2016, the VA issued a guidance memorandum that memorializes its sensitive review—or "Substantial Interest"—FOIA process.  *See* **Exhibit 3**.

20.    Upon information and belief, the August 2016 memorandum, or some subsequent version of the same guidance, continues to apply within the VA.

21.    The "Substantial Interest" review process, in relevant part, requires Veterans Health Administration ("VHA") program or field offices to report to the VA's departmental FOIA office upon receipt of any FOIA request that has "or is likely to generate substantial public interest."  *Id.*  FOIA requests "submitted by a member of the news media or a member of Congress" categorically qualify as "Substantial Interest" requests, regardless of whether they implicate a topic of controversy or "substantial" public interest.  *Id.*

22.    FOIA requests related to the instant topics—namely, administration of the VCCP and the misreporting of wait-time data—have been subject to the "Substantial Interest" process.  *See* **Exhibits 4–8**.  VHA field components, including the C.W. Bill Young VA Medical Center in Bay Pines, Florida, and the James A. Haley Veterans Hospital in Tampa, Florida, have delayed

7

their responses to FOIA requests, or their production of responsive records, until clearance was given by the Veterans Affairs Central Office ("VACO").  *See id.*

23.     The VA will continue to subject FOIA requests related to the VCCP, wait-time data, and similar topics to "Substantial Interest" sensitive review, in contravention of the FOIA. Indeed, it has already done so with respect to the FOIA requests at issue here.

24.     During a telephone conversation with Plaintiff's counsel on June 25, 2021, a VHA FOIA officer confirmed that the FOIA requests at issue here had been flagged for "Substantial Interest" review and their processing routed through VHA's main FOIA office.  Plaintiff's counsel memorialized this conversation in response to the VA's invitation to discuss the processing of AFPF's FOIA requests.  *See* **Exhibit 9** ("[VHA] indicated . . . that AFPF's FOIA requests had been flagged as having 'Substantial Interest,' and that processing would be centralized/overseen by the main VHA FOIA office.").

III.    **AFPF's May 27, 2021 FOIA Request**

25.     By letter, dated May 27, 2021, AFPF submitted a FOIA request to VACO seeking access to five categories of records:

1.      Records reflecting aggregate totals and percentages for pending and completed appointment wait times and related data, as previously disclosed in summary form at the [VHA] "Patient Access Data" portal, https://www.va.gov/health/acess-audit.asp.  The time period for this item is March 1, 2021 to the present.  Please provide records that reflect the requested data on a *monthly basis* (*e.g.*, total number of scheduled appointments for each month of the requested time period) or per reporting period.  If month-by-month or period-by-period data is unavailable, please provide the requested data in the form otherwise maintained by the agency. If responsive records are kept in CSV or Excel format, please produce the records in their native format.

2.      All records concerning the VHA's decision to eliminate proactive disclosure of patient access [data] in nation-wide summary form, as previously available at the "Patient Access Data" portal,

https://www.va.gov/access-audit.asp.  The time period for this item of the request is January 1, 2021 to the present.

3.      All guidance documents, legal opinions, administrative orders, directives, or policy statements issued by the VA concerning any of the following topics:

a.      Interpretation of the VCCP regulations and designated access standards, including the agency's method for calculating wait times (*e.g.*, discussion of the difference between "date of request," "patient preferred date," and "clinically indicated date");

b.      The process by which the VA obtains patient consent to schedule an appointment outside the 20-/28-period established by the VCCP designated access standards;

c.      Limiting or dissuading veterans from using community care; and

d.      The impact of the COVID-19 pandemic on administration of the VCCP.

4.      All records reflecting communications between or amongst any of the following entities, offices, or components concerning any of the topics listed in Item Three: (a) VHA, (b) VA Office of the Secretary, (c) VA Office of General Counsel, (d) White House Office of Management and Budget, (e) White House Domestic Policy Council, or (f) Office of the White House Counsel.

5.      All records concerning congressional requests or inquiries pertaining to any of the topics listed in Item Three.  This item includes, but is not limited to, records originating with any Member or entity of Congress, formal agency responses thereto, and internal VA communications regarding the congressional request or inquiry.  Searches should be conducted, at a minimum, within the VHA, VA Office of the Secretary, VA Office of General Counsel, and VA Office of Public and Intergovernmental Affairs.

**Exhibit 10**.

26.      Except as otherwise noted in individual items of the request, AFPF identified the relevant time period as "January 1, 2020 to the present."  *Id.*  It defined the term "present" as "the date on which the agency begins it search for responsive records."  *Id.*

27.      AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request."  *Id.*  It further explained that "[i]f

9

any portion of a 'record' . . . is responsive to [its] request, then the [VA] should process and disclose the record in its entirety." *Id.* Thus, "[i]f the [VA] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter or scope of AFPF's request," it would need to process all potentially segmented records as responsive. *Id.*

28.    AFPF clarified that, "for all items of the request," it "does not intend to seek disclosure of Personally Identifying Information or other sensitive health information that can be directly associated with an individual patient." *Id.* Yet AFPF reserved the right "to challenge any determination by the VA that responsive records are exempt from disclosure on grounds that they contain such patient information." *Id.*

29.    AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

30.    By letter, dated May 28, 2021, the VA acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06306-F. *See* **Exhibit 11**.

31.    The VA indicated that AFPF's FOIA request had been assigned to the "simple" processing queue. *See id.*

32.    The VA failed to issue any determination on AFPF's fee-related requests.

33.    By letter, dated June 25, 2021, the VA sent AFPF a second acknowledgment letter that assigned AFPF's request a different tracking number: 21-06268-F. *See* **Exhibit 12**. The VA reassigned AFPF's request to the "complex" processing queue. *See id.* The agency again failed to issue any determination on AFPF's fee-related requests.

34.     To date, the VA has failed to provide any further substantive update on the processing of AFPF's FOIA request and it has not issued a final determination or produced any responsive records.

35.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**IV.     <u>AFPF's May 28, 2021 FOIA Requests</u>**

36.     By letters, dated May 28, 2021, AFPF submitted near-identical FOIA requests to fourteen VA entities, all of which sought the same ten categories of records:

1.     Records reflecting the total number of appointments scheduled.

2.     Records reflecting the total number of appointments completed.

3.     Records reflecting the total number of appointments cancelled:

    a.     By a VA health care provider; and

    b.     By a patient.

4.     Records reflecting the total number and percentage of appointments for primary care, mental health care, or non-institutional extended care services scheduled:

    a.     Within 20 days of a patient's date of request; and

    b.     Over 20 days of a patient's date of request.

5.     Records reflecting the total number and percentage of appointments for specialty care scheduled:

    a.     Within 28 days of a patient's date of request; and

    b.     Over 28 days of a patient's date of request.

6.     Records reflecting the total number of patients who, in consultation with a VA health care provider, agreed to schedule an appointment outside the 20-/28-day period established by the VCCP designated access standards.

7.     Records reflecting the total number of patients who refused to schedule an appointment outside the 20-/28-day period established by the VCCP designated access standards.

8.     All records reflecting the policies and practices for documenting whether a patient agrees or refuses to schedule an appointment outside the 20-/28-day period established by the VCCP designated access standards.  This item would include, for example, any blank, standardized form(s) for memorializing such patient consent.

9.     Records reflecting the total number and percentage of patients:

   a.     Eligible for community care under the VCCP;

   b.     Who have elected to receive community care under the VCCP; and

   c.     Who have declined to receive community care under the VCCP.

10.    All guidance documents, legal opinions, administrative orders, directives, policy statements, or communications exchanged between the [VA medical center in receipt of AFPF's FOIA request] and the Veterans Health Administration, VA Office of General Counsel, VA Office of the Secretary, White House Office of Management and Budget, or White House Domestic Policy Council concerning:

   a.     Interpretations of the VCCP regulations and designated access standards, including the agency's method for calculating wait times (*e.g.*, discussion of the difference between "date of request," "patient preferred date," and "clinically indicated date");

   b.     The process by which the VA obtains patient consent to schedule an appointment outside the 20-/28-period established by the VCCP designated access standards;

   c.     Limiting or dissuading veterans from using community care; and

   d.     The impact of the COVID-19 pandemic on administration of the VCCP.

**Exhibit 13** (FOIA Request to Phoenix VA Health Care System).

37.     For all items of the request, AFPF identified the relevant time period as "January 1, 2020 to the present."  *Id.*  It defined the term "present" as "the date on which the agency begins its search for responsive records."  *Id.*

38.     AFPF explained that "to the extent an item of [its] request seeks data," the VA should "provide records reflecting that data on a *monthly basis* (*e.g.*, total number of scheduled appointments for each month of the requested time period)."  *Id.*  It further explained that "[i]f month-by-month data is unavailable," the VA should "provide the requested data in the aggregate or in the form otherwise maintained by the agency.  If responsive records are kept in a CSV or Excel format," the VA should "produce the records in their native format."  *Id.*

39.     AFPF defined the term "appointment," as used in its FOIA request, according to the definition provided at 38 C.F.R. § 17.4005.  *Id.*

40.     AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request."  *Id.*  It further explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then the [VA] should process and disclose the record in its entirety."  *Id.*  Thus, "[i]f the [VA] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter or scope of AFPF's request," it would need to process all potentially segmented records as responsive.  *Id.*

41.     AFPF clarified that, "for all items of the request," it "does not intend to seek disclosure of Personally Identifying Information or other sensitive health information that can be directly associated with an individual patient."  *Id.*  Yet AFPF reserved the right "to challenge any determination by the VA that responsive records are exempt from disclosure on grounds that they contain such patient information.  *Id.*

42.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

43.     AFPF submitted copies of its May 28, 2021 FOIA Request to the following VA entities:

    a.  Phoenix VA Health Care System (Phoenix, AZ)

    b.  Northern Arizona VA Health Care System (Prescott, AZ)

    c.  Southern Arizona VA Health Care System (Tucson, AZ)

    d.  C.W. Bill Young VA Medical Center (Bay Pines, FL)

    e.  Miami VA Health Care System (Miami, FL)

    f.  North Florida/South Georgia Veterans Health System (Gainesville, FL)

    g.  Orlando VA Medical Center (Orlando, FL)

    h.  James A. Haley Veterans Hospital (Tampa, FL)

    i.  West Palm Beach VA Medical Center (West Palm Beach, FL)

    j.  VA Montana Health Care System (Fort Harrison, MT)

    k.  Beckley VA Medical Center (Beckley, WV)

    l.  Hershel Williams VA Medical Center (Huntington, WV)

    m.  Louis A. Johnson VA Medical Center (Clarksburg, WV)

    n.  Martinsburg VA Medical Center (Martinsburg, WV)

**A.    Phoenix VA Health Care System**

44.     Although the Phoenix Health Care System received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 14**.

45.     On July 14, 2021, AFPF attempted to contact a responsible official at the Phoenix Health Care System to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so.  *See* **Exhibit 15**.

46.     The Phoenix Health Care System has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

47.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**B.      Northern Arizona VA Health Care System**

48.     Although the Northern Arizona VA Health Care System received a copy of AFPF's May 28, 2021 FOIA request, it has not formally acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 16**.

49.     The Northern Arizona VA Health Care System requested clarification about the scope of AFPF's request, which AFPF provided by email, dated June 2, 2021.  *See* **Exhibit 17**.

50.     On July 14, 2021, AFPF attempted to contact a responsible official at the Northern Arizona VA Health Care System to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so.  *See* **Exhibit 18**.

51.     The Northern Arizona VA Health Care Center has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

52.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**C.      Southern Arizona VA Health Care System (FOIA Request No. 21-06346-F)**

53.     By letter, dated June 8, 2021, the Southern Arizona VA Health Care System acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06346-F.  *See* **Exhibit 19**.

54.     The Southern Arizona VA Health Care System indicated that AFPF's FOIA request had been assigned to the "complex" processing queue. *Id.*

55.     In the email accompanying its acknowledgment letter, the Southern Arizona VA Health Care System indicated that it had granted AFPF's request for treatment as a representative of the news media for fee purposes, but it failed to issue any determination on AFPF's request for a public interest fee waiver. *See* **Exhibit 20**.

56.     To date, the Southern Arizona VA Health Care System has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

57.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review. This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**D.     C.W. Bill Young VA Medical Center (FOIA Request No. 21-06280-F)**

58.     By letter, dated June 1, 2021, the C.W. Bill Young VA Medical Center, by and through the Bay Pines VA Healthcare System, acknowledged that it had received AFPF's FOIA request on May 28, 2021 and assigned it tracking number 21-06280-F. *See* **Exhibit 21**.

59.     The Bay Pines VA Healthcare System indicated that AFPF's FOIA request had been assigned to the "complex" processing queue. *Id.*

60.     The Bay Pines VA Healthcare System failed to issue any determination on AFPF's fee-related requests.

61.     To date, the Bay Pines VA Healthcare System has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

62. The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review. This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**E.     Miami VA Health Care System (FOIA Request No. 21-06276-F)**

63. By letter, dated May 28, 2021, the Miami VA Health Care System, by and through the Miami VA Medical Center, acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06276-F. *See* **Exhibit 22**.

64. The Miami VA Medical Center indicated that AFPF's FOIA request had been assigned to the "complex" processing queue. *Id.*

65. The Miami VA Medical Center failed to issue any determination on AFPF's fee-related requests.

66. To date, the Miami VA Medical Center has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

67. The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review. This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**F.     North Florida/South Georgia Veterans Health System**
**(FOIA Request No. 21-06322-F)**

68. By letter, dated June 1, 2021, the North Florida/South Georgia Veterans Health System, by and through the Malcom Randall VA Medical Center, acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06322-F. *See* **Exhibit 23**.

69. The Malcom Randall VA Medical Center indicated that AFPF's FOIA request had been assigned to the "complex" processing queue. *Id.*

70.     The Malcom Randall VA Medical Center failed to issue any determination on AFPF's fee-related requests.

71.     To date, the Malcom Randall VA Medical Center has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

72.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

### G.     Orlando VA Medical Center

73.     Although the Orlando VA Medical Center received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 24**.

74.     On July 14, 2021, AFPF attempted to contact a responsible official at the Orlando VA Medical Center to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so.  *See* **Exhibit 25**.

75.     The Orlando VA Medical Center has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

76.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**H.** **James A. Haley Veterans Hospital (FOIA Request No. 21-06343-F)**

77.     By letter, dated June 1, 2021, the James A. Haley Veterans Hospital acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06343-F.  *See* **Exhibit 26**.

78.     The James A. Haley Veterans Hospital indicated that AFPF's FOIA request had been assigned to the "complex" processing queue.  *Id.*

79.     The James A. Haley Veterans Hospital explained that it had tasked a search for responsive records to its "DAAS office."  *Id.*

80.     Upon information and belief, "DAAS" refers to "Data-As-A-Service."

81.     The James A. Haley Veterans Hospital failed to issue any determination on AFPF's fee-related requests.

82.     To date, the James A. Haley Veterans Hospital has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

83.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**I.** **West Palm Beach VA Medical Center**

84.     Although the West Palm Beach VA Medical Center received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 27**.

85.     On July 14, 2021, AFPF attempted to contact a responsible official at the West Palm Beach VA Medical Center to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so.  *See* **Exhibit 28**.

86.     The West Palm Beach VA Medical Center has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

87.     The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**J.      VA Montana Health Care System (FOIA Request No. 21-06305-F)**

88.     By letter, dated June 28, 2021, the VA Montana Health Care System provided AFPF with a notice of the agency's extension of its response deadline.  *See* **Exhibit 29**. Specifically, the VA Montana Health Care System indicated that it "anticipate[d] providing [AFPF] with a response within the next ten (10) business days," that is, by July 13, 2021.

89.     The VA Montana Health Care System did not provide a justification for the "delay" in its processing of AFPF's FOIA request.

90.     The VA Montana Health Care System never issued a formal acknowledgment letter.  Although the agency's extension notice provided AFPF with a tracking number, *see* Ex. 29, the VA Montana Health Care System has not otherwise informed AFPF whether its FOIA request has been assigned to a particular processing queue.  *Id.*

91.     The VA Montana Health Care System failed to issue any determination on AFPF's fee-related requests.

92. To date, the VA Montana Health Care System has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

93. The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review. This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

### K. Beckley VA Medical Center

94. Although the Beckley VA Medical Center received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires. *See* **Exhibit 30**.

95. On July 14, 2021, AFPF attempted to contact a responsible official at the Beckley VA Medical Center to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so. *See* **Exhibit 31**. After AFPF's email bounced as undeliverable, *see* **Exhibit 32**, counsel for AFPF attempted to reach the Beckley VA Medical Center by telephone. Despite leaving a message with the responsible FOIA official, Jennifer Treadway, AFPF received no response.

96. The Beckley VA Medical Center has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

97. The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review. This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**L.**      **Hershel Williams VA Medical Center**

98.      Although the Hershel Williams VA Medical Center received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 33**.

99.      On July 14, 2021, AFPF attempted to contact a responsible official at the Hershel Williams VA Medical Center to obtain tracking details and an update on the status of AFPF's FOIA request, but it was unable to do so.  *See* **Exhibit 34**.

100.      The Hershel Williams VA Medical Center has not issued a final determination on or produced any records responsive to AFPF's FOIA request.

101.      The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**M.**      **Louis A. Johnson VA Medical Center (FOIA Request No. 21-06281-F)**

102.      By letter, dated May 28, 2021, the Louis A. Johnson VA Medical Center acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06281-F.  *See* **Exhibit 35**.

103.      The Louis A. Johnson VA Medical Center indicated that AFPF's FOIA request had been assigned to the "complex" processing queue.  *Id.*

104.      The Louis A. Johnson VA Medical Center granted AFPF's request for a public interest fee waiver, but it did not address AFPF's fee category request.  *See id.*

105.      To date, the Louis A. Johnson VA Medical Center has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

106.    The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**N.    Martinsburg VA Medical Center (FOIA Request No. 21-06331-F)**

107.    By letter, dated June 1, 2021, the Martinsburg VA Medical Center acknowledged that it had received AFPF's FOIA request and assigned it tracking number 21-06331-F.  *See* **Exhibit 36**.

108.    The Martinsburg VA Medical Center indicated that AFPF's FOIA request had been assigned to the "complex" processing queue. *Id.*

109.    The Martinsburg VA Medical Center failed to issue any determination on AFPF's fee-related requests.

110.    Although the Martinsburg VA Medical Center received a copy of AFPF's May 28, 2021 FOIA request, it has not acknowledged receipt of the request, provided a tracking number, or otherwise responded to AFPF's inquires.  *See* **Exhibit 36**.

111.    To date, the Martinsburg VA Medical Center has failed to provide any further substantive update on the processing of AFPF's FOIA request, and it has not issued a final determination or produced any responsive records.

112.    The VA has flagged AFPF's FOIA request for "Substantial Interest" sensitive review.  This is likely to lead to politicized review of any response or production of records, and it will result in delayed processing of AFPF's FOIA request.

**COUNT I**
**Violation of the FOIA: Failure to Comply with Statutory Requirements**

113.    AFPF repeats all of the above paragraphs.

114.    The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records" and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

115.    The FOIA also requires an agency to respond to valid requests within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days. *Id.* § 552(a)(6)(A)–(B).  If an agency requires additional time to process a request, the FOIA mandates that it provide the requester with "an opportunity to arrange . . . an alternative time frame for processing the request[.]"  *Id.* § 552(a)(6)(B)(ii).

116.    The FOIA requests at issue in this case seek access to agency records maintained by the VA, by and through its various component offices and medical facilities.  Those FOIA requests reasonably describe the records sought and otherwise comply with the FOIA and applicable regulations.

117.    The VA has failed to issue final determinations on or promptly produce agency records responsive to the FOIA requests at issue within the applicable time limits.

118.    The VA also has failed to comply with the FOIA in that it never "arrange[d] . . . alternative time frame[s]" for responding to AFPF's requests, never provided estimated dates of completion, and never actively invited AFPF to negotiate "alternative" response deadlines.  With limited exception, the VA never sought clarification on the scope of AFPF's FOIA requests.

119.    AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

120.    The VA has improperly subjected AFPF's FOIA requests to politicized FOIA review policy by flagging the requests as implicating a "Substantial Interest."  This has and will impermissibly delay responses to AFPF's FOIA requests and any planned production of responsive agency records in contravention of the FOIA.

121.    AFPF is likely to have future FOIA requests subject to the same improper treatment in the future, given its active engagement in investigating the subject-matter topics implicated in the instant FOIA request.  Because AFPF qualifies as a representative of the news media, the VA is also likely to subject AFPF's FOIA requests to "Substantial Interest" review on that basis alone.

122.    The "Substantial Interest" review process is likely to impair AFPF's lawful access to records now and in the future.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff AFPF respectfully requests and prays that this Court:

a.      Order Defendant VA to process AFPF's FOIA requests and issue final determinations within twenty (20) business days of the date of the Order;

b.      Order Defendant VA to produce all agency records responsive to AFPF's FOIA requests promptly upon issuing the aforementioned final determinations;

c.      Enjoin Defendant VA from subjecting AFPF's FOIA requests to centralized political review and/or approval as part of its "Substantial Interest" FOIA process;

d.      Maintain jurisdiction over this case until Defendant VA complies with the Order and, if applicable, adequately justifies its treatment of all responsive records;

e.      Award AFPF its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

f.      Grant such other relief as the Court may deem just and proper.

//

//

//

//

Dated: July 20, 2021                    Respectfully submitted,

                                        */s/ Ryan P. Mulvey*
                                        Ryan P. Mulvey
                                        D.C. Bar No. 1024362
                                        Eric R. Bolinder
                                        D.C. Bar No. 1028335

                                        AMERICANS FOR PROSPERITY FOUNDATION
                                        1310 North Courthouse Road, Suite 700
                                        Arlington, VA 22201
                                        Telephone: (571) 444-2841
                                        rmulvey@afphq.org
                                        ebolinder@afphq.org

                                        *Counsel for Plaintiff*